CHIN KEE vs. COMMONWEALTH.

Suffolk.    March 4, 1968. — April 8, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Plea, Arraignment, Assistance of counsel, Motion to
    quash, Abatement. *Constitutional Law,* Assistance of counsel. *Error,*
    Whether error harmful.

A plea of not guilty by the defendant at arraignment in a criminal pro-
    ceeding in Massachusetts in 1932 left it open to him to raise the de-
    fence of insanity at any time during his trial, and where the record of
    a murder conviction in that year showed on writ of error compliance
    with G. L. c. 123, § 100A, as amended, by the department of mental
    diseases before the murder trial, including a report that the defendant
    "has no mental disease or defect," it was held that he had lost no
    rights with respect to the defence of insanity because he had been
    without counsel when he pleaded not guilty at his arraignment. [158–
    159]

A plea of not guilty by the defendant at arraignment in a criminal pro-
    ceeding in Massachusetts in 1932 did not preclude him from seasonably
    filing thereafter a motion to quash the complaint or indictment for a
    formal defect apparent on the face thereof under G. L. c. 278, § 17,
    and the defendant in a murder case did not lose any rights with respect
    to such a motion by not having had counsel when he pleaded not
    guilty at his arraignment. [160–161, 162]

With respect to raising the defence of insanity and to filing a motion to
    quash following a plea of not guilty by the defendant at his arraign-
    ment in a criminal proceeding in Massachusetts in 1932, no basis was
    seen upon writ of error brought in 1967 to characterize the arraign-
    ment as a "critical stage" in the proceeding. [162]

This court prior to 1964 considered constitutional issues raised by pleas
    in abatement in criminal proceedings. [163]

Upon consideration, on writ of error brought in 1967, of the entire rec-
    ord of the petitioner's conviction in 1932 on a murder indictment, this
    court was convinced beyond a reasonable doubt that the petitioner,
    with respect to matters in abatement, was not prejudiced by absence
    of counsel at his arraignment, at which he pleaded not guilty, where it
    appeared that subsequently counsel was appointed to defend the pe-
    titioner and acted diligently and competently before, during and after
    his trial, and it did not appear that there had been any available
    ground of abatement. [164]

PETITION for a writ of error filed in the Supreme Judicial
Court for the county of Suffolk on June 29, 1967.

The case was reserved and reported by *Kirk*, J., without decision.

*Reuben Goodman* (*Robert A. Novick* with him) for the petitioner.

*Richard L. Levine*, Deputy Assistant Attorney General (*Willie J. Davis*, Assistant Attorney General, with him), for the Commonwealth.

KIRK, J. This petition for writ of error was reserved and reported without decision by the single justice on the petition, the answer, the assignment of error, the return, and an amended stipulation of facts.

The record shows that on September 13, 1932, Chin Kee was indicted for murder. The then department of mental diseases was given notice as required by G. L. c. 123, § 100A (as amended through St. 1929, c. 105), on the same day. On September 14 he was arraigned, pleaded not guilty and requested that counsel be appointed to defend him because he was without funds. On October 5 counsel was appointed. On October 10 the department of mental diseases filed its report as required by the statute.

The case proceeded to trial on October 31, 1932. On November 4 Chin Kee was convicted of first degree murder. On appeal to this court, judgment was ordered to be entered on the verdict. *Commonwealth* v. *Chin Kee*, 283 Mass. 248. The sentence of death was commuted by the Governor to a sentence of imprisonment for life. Some years later the latter sentence was commuted to a sentence of imprisonment from sixty-five years to life.

The major premise of Chin Kee's argument for reversal is the holding of the Supreme Court of the United States in *Hamilton* v. *Alabama*, 368 U. S. 52. The consequences of a plea at arraignment under the special features of Alabama law were discussed. The Supreme Court determined that arraignment in Alabama was a "critical stage" at which the advice of counsel was needed to preserve rights which under Alabama law might be forever lost. In the *Hamilton* case, the court did not decide that counsel at arraignments was indispensable in every State. This was made clear in *Stovall*

v. *Denno, Warden,* 388 U. S. 293, where reference was made
to the constitutional right to counsel *"at some forms of
arraignment, Hamilton* v. *Alabama"* (emphasis supplied).

It is important, therefore, that consideration be given
to the features of arraignment under Alabama law which led
the Supreme Court to characterize the arraignment as a
"critical stage," and that these features then be compared
with arraignment under the law of this Commonwealth.  The
court pointed out first and foremost that in Alabama [1]
"[I]t is . . . [at arraignment] that the defense of insanity
must be 'pleaded . . . or the opportunity is lost. . . .
Thereafter that plea may not be made except in the discre-
tion of the trial judge, and his refusal to accept it is 'not
revisable' on appeal. . . .    [2] Pleas in abatement must
also be made at the time of arraignment.  [3] It is then that
motions to quash based on systematic exclusion of one race
from grand juries . . . or on the ground that the grand jury
was otherwise improperly drawn . . . must be made"
(citations only omitted).

1. We recognize fully the gravity of a stage in criminal
procedure that thereafter precludes the defence of insanity
which reaches the very heart of criminal responsibility.
The fact is, however, that the law of this Commonwealth
is diametrically opposite to that of Alabama in that the
defence of insanity is not precluded by any plea on arraign-
ment but, on the contrary, is open to the defendant through-
out the trial.  Insanity is not matter for a special plea.
The defence of insanity is open on a plea of not guilty.
Under that plea, the sanity of the defendant is placed in
issue whenever evidence is offered at the trial tending to
show insanity.  And in every case where sanity is in issue,
the Commonwealth has the burden of proving beyond a
reasonable doubt that the defendant is sane.  *Common-
wealth* v. *Clark,* 292 Mass. 409, 415.  *Commonwealth* v. *Cox,*
327 Mass. 609, 613.

Furthermore, under the Briggs Law, so called, in capital
cases and in the case of certain other persons held for trial,
the law itself initiates an inquiry into the mental condition

of the accused.[1]   The law in all essential particulars reads now as it did at the time of Chin Kee's indictment (as amended through St. 1929, c. 105) and at the time of its first enactment (St. 1921, c. 415).   The record shows compliance with the statute before Chin Kee's trial.   The report signed by two psychiatrists in the department concluded with the statement that Chin Kee "has no mental disease or defect."   Feature [1] of an Alabama arraignment, therefore, has no parallel in Massachusetts.   Chin Kee lost no rights on this aspect of the case at arraignment.

2. Much of the discussion which follows relative to features [2] and [3] will not be applicable to indictments returned or complaints issued after the effective date of G. L. c. 277, § 47A, inserted by St. 1965, c. 617, and Rule 101A of the Superior Court, effective December 1, 1964.   It is indispensable, however, to consideration of the case before us.

A comparison of features [2] and [3] under Alabama law with corresponding features in Massachusetts law involves differences in nomenclature.   It would appear that the roles of a plea in abatement and a motion to quash are respectively reversed in the two jurisdictions.   (Feature [3] in quotation above from *Hamilton* v. *Alabama*.)   It is of course the substance and not the name of a pleading that controls and we look at the problem in that light.   "A motion to quash is confined to taking objection to an indictment 'for a formal defect apparent on the face thereof.'   G. L. (Ter. Ed.) c. 278, § 17.   It is the equivalent of a demurrer." *Commonwealth* v. *Geagan*, 339 Mass. 487.   Section 17 provided at the time of Chin Kee's trial: "An objection to . . . [an] indictment . . . for a formal defect apparent on the face thereof shall be taken by demurrer or by motion to

---

[1] General Laws c. 123, § 100A: "Whenever a person is indicted by a grand jury for a capital offense . . . the clerk of the court in which the indictment is returned . . . shall give notice to the department, which shall cause such person to be examined with a view to determine his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility. . . . The department shall file a report of its investigation with the clerk of the court in which the trial is to be held, and the report shall be accessible to the court, the probation officer thereof, the district attorney and to the attorney for the accused."

Chin Kee *v.* Commonwealth.

quash, assigning specifically the objections relied on, . . . *before a jury has been sworn in the superior court*" (emphasis supplied). Under this statute (originally St. 1864, c. 250, § 2) a motion to quash was not precluded by a plea made at arraignment whether the defendant was with or without counsel. The statute was applied and discussed in 1865 in *Commonwealth* v. *McGovern*, 10 Allen, 193. The court there held that if a motion to quash is filed as prescribed by the statute, it must be heard, and when heard must be decided according to fixed rules of law and if denied an exception would lie. The court declared (p. 195), "The manifest purpose of this statute was to require formal objections to be taken before putting the Commonwealth to the trouble and expense of a trial on the facts, not to embarrass or take away the right of the defendant to obtain the opinion of the highest court upon any such objection." The statute has frequently been applied according to its terms. *Commonwealth* v. *Fitchburg R.R.* 126 Mass. 472, 474. *Commonwealth* v. *Boston & Maine R.R.* 133 Mass. 383, 387–388. *Commonwealth* v. *Schaffner*, 146 Mass. 512, 514. *Commonwealth* v. *Snell*, 189 Mass. 12, 16, 19. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 570–571. *Commonwealth* v. *Hogan*, 249 Mass. 555, 561. *Commonwealth* v. *Markarian*, 250 Mass. 211, 213.

Were it not for certain cases cited by Chin Kee,[2] we would leave the subject of motions to quash at this point with the conclusion that Chin Kee by his plea in the absence of counsel at arraignment was not deprived of the right to file such a motion thereafter under G. L. c. 278, § 17. These cases must be discussed because they have tended to blur the distinction between the terms "motion to quash" and "plea in abatement." A critical examination of each of these cases, including where necessary an examination of the original papers, shows that they do not support the contention that motions to quash could not be filed without leave of court after plea at arraignment. The first paragraph of

[2] The same cases were relied upon by the petitioner (Macey) in *Macey* v. *Commonwealth*, 352 Mass. 519, 521.

the opinion in *Commonwealth* v. *Tucker*, 189 Mass. 457, 463, refers to the "special plea and the motion to quash." There were two papers filed, one captioned "special plea" and the other "motion to quash." Each was in fact and in substance a plea in abatement. The court dealt with the two papers for what they were in fact. The true nature of the papers is noted in *Lebowitch, petitioner*, 235 Mass. 357, 362. The court did not hold in the *Tucker* case that a motion to quash must be filed at arraignment nor did it by indirection suggest that St. 1864, c. 250, § 2, did not control the substance and timing of a motion to quash. *Commonwealth* v. *Wakelin*, 230 Mass. 567, contrary to Chin Kee's argument, keeps the distinction clear. In the first paragraph of the opinion (p. 570), dealing with matters in abatement which are waived by plea, motions to quash are conspicuously absent. In the third paragraph of the opinion the motion to quash was specifically dealt with on the merits. Again, in *Lebowitch, petitioner*, 235 Mass. 357, 362–363, the same distinction is made: "The matters set forth are essentially in abatement. . . . A general plea to the indictment admits its genuineness. *It is a waiver of matters in abatement*" (emphasis supplied). In *Commonwealth* v. *Walsh*, 255 Mass. 317, the paper captioned "motion to quash" was in fact and substance a plea in abatement since it was addressed, not to formal defects on the face of the indictment but to occurrences (alleged incompetent testimony) in the grand jury room. Although the court disposed of the issue for what it was, the court did not clearly state the procedural distinction. The statement in *Commonwealth* v. *Greenberg*, 339 Mass. 557, 564, is wholly consistent with what we say here. The subjects of the "special pleas" in the *Greenberg* case so far as they had any substance related to matters not apparent on the face of the indictments and were quite correctly classified as matters in abatement which were waived by a plea of not guilty at arraignment. The conclusion stated in the first sentence of this paragraph therefore stands unimpaired by our analysis of the cases relied upon by Chin Kee.

We pursue briefly the matter of the motion to quash under G. L. c. 278, § 17, as if such a motion had been filed in the case before us. We have examined the indictment charging Chin Kee with murder. We are in as good position now as the judge would have been before the jury were empanelled. The indictment conforms to the standard set out in G. L. c. 277, § 79 (murder). It has long been settled that the statutory forms are sufficient. *Commonwealth* v. *Jordan,* 207 Mass. 259, 266. *Commonwealth* v. *Allison,* 227 Mass. 57, 61. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 570. Had a motion to quash been filed by Chin Kee, it must as matter of law have been overruled. There was no defect on the face of the indictment. Moreover, Chin Kee's counsel filed a motion for specifications which was allowed and fully complied with, furnishing him the date, time, manner and means of committing the crime, and a description of the weapon used.

From the foregoing discussion, we think it may fairly be said at this juncture that as to (1) the defence of insanity and (2) motions to quash (as that term is applied in Massachusetts) there is no basis to characterize arraignment in Massachusetts as a "critical stage."

3. Adhering to the terminology of our jurisdiction, pleas in abatement remain to be considered. In Alabama they are called "motions to quash." *Hamilton* v. *Alabama,* 368 U. S. 52, 53–54. Pleas in abatement reach matter outside the scope of a motion to quash. They attack, not the recitals in an indictment returned by the grand jury but the "genuineness" or "validity" of the procedure by which the indictment was returned by the grand jury. The issue of lack of genuineness or validity could be raised by a plea in abatement properly alleging irregularities, such as the presence of unauthorized persons, *Commonwealth* v. *Tucker,* 189 Mass. 457, 463, *Commonwealth* v. *Harris,* 231 Mass. 584, 586, *Lebowitch, petitioner,* 235 Mass. 357, 362, or the fact that no witnesses appeared before the grand jury, *Commonwealth* v. *Clune,* 162 Mass. 206, 207.

It was early held and became the general rule that a plea

of not guilty was a waiver of matters in abatement, and that thereafter pleas in abatement could be filed in the discretion of the court and not as matter of right. *Commonwealth* v. *Blake*, 12 Allen, 188. *Commonwealth* v. *Wakelin*, 230 Mass. 567. *Lebowitch, petitioner*, 235 Mass. 357, 362–363. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 564. Moreover, a decision in the Superior Court on a plea in abatement was final, G. L. c. 278, § 27, and a judgment on a plea in abatement was not appealable.[3]  G. L. c. 278, § 28. Notwithstanding the general rule and the statutory provisions, this court has considered constitutional issues raised by pleas in abatement. *Commonwealth* v. *Clune*, 162 Mass. 206, 207, 213. *Commonwealth* v. *Harris*, 231 Mass. 584. *Commonwealth* v. *Geagan*, 339 Mass. 487, 495–498. *Commonwealth* v. *Monahan*, 349 Mass. 139, 157–158. *Commonwealth* v. *Slaney*, 350 Mass. 400, 401–402. *Commonwealth* v. *Favulli*, 352 Mass. 95, 104–108, 116–126.

4. The question is whether in light of what we have said the holding in *Hamilton* v. *Alabama* compels a reversal of the judgment against Chin Kee. It would appear to be Chin Kee's position that *Hamilton* v. *Alabama* imposes a rule of thumb which we must apply despite the demonstrated differences between the consequences of arraignment in Alabama and Massachusetts. We do not agree. It seems to us that the appropriate procedure is not automatic reversal, but the procedure set out in *Chapman* v. *California*, 386 U. S. 18, and *Gilbert* v. *California*, 388 U. S. 263, 268, both capital cases and both involving constitutional error. These cases modify, we think, the "automatic reversal" rule in the *Hamilton* case. See 386 U. S. at 22. In the *Chapman* case the court declined to rule that no constitutional error could be harmless, but instead ruled that "before a federal constitutional error can be held harmless, the [State] court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U. S. at 24. The burden of proof was placed on the State, the "beneficiary of the error."

[3] See now G. L. c. 277, § 47A, inserted by St. 1965, c. 617; Rule 101A of the Superior Court, effective December 1, 1964.

Out of an abundance of caution we adopt that procedure here.[4]

The issue whether there was harmless error may be resolved by a thorough examination of the record. It shows that Chin Kee's court appointed counsel acted diligently and competently before, during and after trial. Some of his pretrial and post trial efforts are set out in the footnote.[5] He sought and obtained executive clemency for Chin Kee. He did not file a motion to quash but, for reasons heretofore stated, there was no reason for him to do so. With respect to matters of abatement the fact that counsel did not ask for leave to file such a plea in light of all the circumstances, points to the conclusion that he had no grounds to do so. In his argument before us, Chin Kee suggests no grounds for a plea in abatement. There can be no question of "systematic exclusion of one race from grand juries" in Middlesex County in 1932. See *Hamilton* v. *Alabama*, 368 U. S. 52, 54. We take notice that save for a few one man or family business operations scattered through the county persons of Oriental heritage were mainly in the academic community at Cambridge.

After consideration of the entire record, we are convinced, beyond a reasonable doubt, that Chin Kee suffered no prejudice from the absence of counsel at his arraignment. We hold, as we did in *Macey* v. *Commonwealth*, 352 Mass. 519, 522–523, that there was no harmful constitutional error. *Chapman* v. *California*, 386 U. S. 18, 24.

*Judgment affirmed.*

---

[4] In *Chapman* v. *California*, the court said at page 24: "While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard . . . [than in *Fahy* v. *Connecticut*, 375 U. S. 85]."

[5] The return shows nine major motions filed by defence counsel, including a motion for particulars, a motion that he be furnished with a copy of the autopsy and report thereon, a motion that the scene of killing be ordered kept in its then condition, a motion for transcript of statements made by the petitioner, a motion for a transcript of evidence before the grand jury and a list of witnesses relied upon by the Commonwealth, and a motion for inspection of exhibits of the Commonwealth. Counsel also filed and had hearings on a motion for new trial, a first supplementary motion for new trial, and a second supplementary motion for new trial.